UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

NICOLAS SUBDIAZ-OSORIO,                           Case No. 14-CV-1227-PP

        Petitioner,

v.

MARC CLEMENTS,

        Respondent.

---

## DECISION AND ORDER DENYING PETITION
## FOR WRIT OF *HABEAS CORPUS* (DKT. NO. 1)

---

Petitioner Nicolas Subdiaz-Osorio filed a petition for a writ of *habeas corpus* under 28 U.S.C. §2254, seeking relief from the sentence he received after his 2010 plea to and conviction for first-degree reckless homicide. Dkt. No. 1. The petitioner alleges that investigating officers violated his Fourth Amendment rights by tracking his cell phone without a warrant, id. at 6, and that the Wisconsin Supreme Court erred in concluding that exigent circumstances provided an exception to the warrant requirement, id. at 9.[1] He also alleges that his Fifth Amendment rights were violated when he was questioned without an attorney present. Id. at 14. Finally, he argues that the Wisconsin Court of Appeals' harmless error analysis was contrary to federal law. Id. at 17. The court denies the petition.

---

[1] The petitioner stated this argument as two grounds—whether the officers conducted a search without a warrant, and whether there were exigent circumstances that would justify making an exception to the warrant requirement.

## I.  FACTUAL BACKGROUND

On February 7, 2009, the petitioner and his brother got into an argument in the mobile home they shared, and Marcos hit the petitioner in the mouth. Dkt. No. 1 at 7; Dkt. No. 18 at 3. The petitioner then retrieved two knives from the closet and stabbed Marcos with the knives – once in the chest and once under the eye. Id. Marcos fell to the floor, where the petitioner kicked and punched him multiple times, despite the pleas of eyewitness Lanita Mintz. Dkt. No. 18 at 3. The next morning, a friend of the petitioner returned to the mobile home and found Marcos dead. Id. The police went to the mobile home later that day; they found that Marcos' body was "severely battered and appeared to have been stabbed," surrounded by blood and evidence of heavy drinking. Id.

In the meantime, the petitioner had borrowed his girlfriend's car and left the state. Dkt. No. 1 at 7; Dkt. No. 11-2 at 2. The police suspected that the petitioner might be on his way to Mexico, given that he was in the country illegally. Dkt. No. 11-2 at 2. Without getting a warrant, they asked the petitioner's cell phone service provider to track the location of the petitioner's phone. Id. The officers tracked the petitioner to a highway in Arkansas, where they arrested him. Id. Several police officers traveled to Arkansas to interrogate the petitioner. Id. An officer named Torres translated the interrogation into Spanish. Id. at 16. Torres read the petitioner his Miranda[2] warnings in Spanish, and had him sign a waiver form titled "Waiver of Constitutional

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

Rights." Id. During the interrogation, the petitioner asked if the officer was going to take him back to Kenosha. Id. The following dialogue ensued:

> We aren't going to take you back to Kenosha. What happens is that you have to appear in front of a judge ... And after you appear in front of a judge here in Arkansas then they will find out if there is enough reason to send you back to Kenosha, ... but we are not going to do that right now. We are not going to know that right now . . . .

Id. at 16-17. The petitioner then asked, "How can I do to get an attorney here because I don't have enough to afford for one."[3] Id. at 17. The officer responded, "If you need an attorney . . . by the time you're going to appear in the court, the state of Arkansas will get an attorney for you . . . ." Id. at 17. The interrogation then continued. Id.

## II.    PROCEDURAL HISTORY

The state charged the petitioner with first-degree intentional homicide for stabbing his brother, Marcos, to death on February 8, 2009. Dkt. No. 18 at 2. A couple of months later, the petitioner filed a pretrial motion "to suppress all statements and evidence that the police obtained after his arrest." Dkt. No. 11-2 at 18-19. He argued that the police had violated his Fourth Amendment rights by obtaining his cell phone location data without a warrant. Id. at 19. Two weeks later, he filed another suppression motion, seeking to suppress the statements he made during the interrogation in Arkansas on the ground that Torres had not properly warned him of his Miranda rights. Id. The trial court

---

[3] During the hearing, the interpreter later clarified that the petitioner said "And to get an attorney and to get an attorney of –from here because I don't have enough to pay, or I don't have to pay." Dkt. No. 11-4 at 68-69.

denied both motions. Id. at 19-20. The court that ruled there was no violation of either the Fourth or Fifth Amendments. Id.

The state reduced the charge to first-degree reckless homicide by use of a dangerous weapon. Id. at 20. The petitioner pled guilty to that charge. Id. On June 29, 2010, the Circuit Court of Kenosha County entered a judgment of conviction against the petitioner, and sentenced him to twenty years of confinement, followed by fifteen years of extended supervision Dkt. No. 11-1 at 1.

The petitioner appealed under Wis. Stat. §971.31(10), challenging the order denying his suppression motions. Dkt. No. 11-7. The Wisconsin Court of Appeals affirmed the trial court's judgment in a *per curiam* decision issued on November 15, 2012, State v Subdiaz-Osorio, No. 2010AP3016-CR (Wis. Ct. App. Nov. 15, 2012). Id. The court of appeals assumed for the purposes of its decision that the trial court should have suppressed the evidence, and focused its analysis on whether the failure to do so constituted harmless error. Id. at 2. The court concluded that the petitioner "would have accepted the same plea deal even if the suppression motion had been granted," and thus that the trial court's failure to grant the suppression motions constituted harmless error. Id. at 5.

The Wisconsin Supreme Court granted review. State v. Subdiaz-Osorio, 849 N.W.2d 748 (Wis. 2014); Dkt. No. 11-2. The Court affirmed the court of appeals, but in a somewhat fractured decision. Dkt. No. 11-2. Justice Prosser wrote the majority opinion; five justices concurred in the mandate. Id. at 4.

Unlike the court of appeals, Justice Prosser analyzed in depth the question of whether officers violated the petitioner's Fourth Amendment rights by obtaining his cell location data without a warrant. He concluded that even if the petitioner had possessed a reasonable expectation of privacy in his cell location data, and even if the act of obtaining the data constituted a search, the search would have fallen into the exigent circumstances exception to the warrant requirement. Dkt. No. 11-2 at 41-42. He also analyzed the petitioner's argument that the interviewing officers violated his Fifth Amendment right against self-incrimination when they did not stop the interrogation and provide him a lawyer once he asked about how to hire one. Justice Prosser concluded that the petitioner did not unequivocally assert his Sixth Amendment right to counsel when he asked about a lawyer. Id. at 52.

Justice Bradley concluded that obtaining the petitioner's cell location data constituted a warrantless search, not justified by exigent circumstances. She also concluded that the petitioner had invoked his Sixth Amendment right to counsel by asking about how to get a lawyer. But she found that these errors were harmless, and so concurred in the mandate. Id. at 54. Justice Crooks also found that obtaining the cell location data constituted a search, but stated that he would not apply the exclusionary rule because of the good-faith exception to the warrant requirement. Id. at 62. He agreed that the petitioner had not unequivocally invoked his Sixth Amendment right to counsel, and so concurred in the mandate. Id.

Justice Roggensack also held that obtaining the petitioner's cell location data constituted a search, but agreed with Justice Prosser that the search fell within the exigent circumstances exception. She also agreed that the petitioner did not unequivocally invoke his Sixth Amendment rights. Thus, she concurred in the mandate. Id. at 75. Justices Ziegler and Gableman joined Justice Roggensack's opinion, although Justice Ziegler wrote separately to comment on the possible impact of a recently-decided Supreme Court case, Riley v. California, ___ U.S. ___, 134 S. Ct. 2473 (2014). Id. at 80. Chief Justice Abrahamson dissented. Id. at 83.

The petitioner filed a petition for a writ of *certiorari* to the United States Supreme Court, which that Court denied on October 14, 2014. Dkt. No. 3.

The petitioner filed his petition before this court on October 2, 2014. Dkt. No. 1. (He asked the then-assigned judge to stay this federal proceeding until the U.S. Supreme Court could rule on his petition for *certiorari*, dkt. no. 2; the court granted that request and dismissed the case without prejudice, dkt. no. 5, then reopened the case once the petitioner notified the court that the Supreme Court had denied the writ, dkt. no. 8.).

III.   **LEGAL STANDARD**

To prevail on a petition for a writ of *habeas corpus*, the petitioner must show that he is in custody in violation of the constitution or laws or treaties of the United States. 28 U.S.C. §2254(d). If the state appellate court ruled on the merits of his claims, the petitioner must go a step further and show that his detention is the result of a state court decision that was (a) contrary to, or

6

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (b) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Id.; see Gonzales v. Mize, 565 F.3d 373, 379 (7th Cir. 2009) ("We review the decision of the last state court that substantively adjudicated each claim."). This standard is highly deferential to state courts. Carter v. Tegels, No. 3:11-cv-00320-wmc, 2013 WL 5570294, *2 (W.D. Wis. Oct. 9, 2013) (citing Harrington v. Richter, 562 U.S. 86, 101 (2011)). The state appellate court's ruling must be "objectively unreasonable, not merely wrong; even clear error will not suffice." White v. Woodall, ___ U.S. ___, 134 S. Ct. 1697, 1702 (2014) (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)(internal quotations omitted)). The ruling must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

Generally, though, a federal *habeas* court does not reexamine state-court determinations on state law questions. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see Ruhl v. Hardy, 743 F.3d 1083, 1098 (7th Cir. 2014) (citations omitted) (noting as a general rule, federal *habeas* courts cannot overturn evidentiary determinations made by state courts). But, "where the state court's resolution of the evidentiary dispute was clearly unreasonable or otherwise implicates federal constitutional rights, a court may grant relief on state law evidentiary questions." Id.

## IV.   ARGUMENTS

In his brief, the petitioner first argues that the investigating officers violated his Fourth Amendment rights by obtaining his cell location data without a warrant. Dkt. No. 17 at 11. He states that he believes that if the United States Supreme Court were to address this specific issue, it would "hold that the tracking of [the petitioner's] location by his cell phone (GPS) was a search under the Fourth Amendment," for which the officers would have had to obtain a warrant. Id. at 13. He argues that the Wisconsin Supreme Court erred in finding that there were exigent circumstances which justified the officers searching without a warrant. Id.

Next, he argues that he invoked his Sixth Amendment right to counsel during the interrogation in Arkansas. Id. at 16. He disagrees with Justice Prosser's conclusion that he did not unequivocally invoke that right, id. at 17, and argues that he wanted to have an attorney with him during that interrogation, id. at 18.

Finally, the petitioner argues—for the first time in his brief—that he did not enter his guilty plea knowingly, voluntarily and intelligently. Id. at 18. He appears to make this argument in response to Justice Bradley's conclusion that the warrantless search and the interrogation constituted harmless error. Id. at 18-19.

The respondent asks the court to deny the petition because (1) Stone v. Powell, 428 U.S. 465 (1976) bars review of Fourth Amendment challenges where the petitioner was provided a full and fair opportunity to litigate the

Fourth Amendment claims in state court, and (2) the Wisconsin courts did not

act contrary to, or unreasonably apply, Miranda v. Arizona, 384 U.S. 436

(1966), and Davis v. United States, 512 U.S. 452 (1994). Dkt. No. 18 at 1-2.

**V. ANALYSIS**

A. The Petitioner's Fourth Amendment Claim Is Not Cognizable on _Habeas_ Review.

"[A] petitioner cannot obtain collateral relief on a Fourth Amendment

claim unless the state courts deprived him of a full and fair opportunity to

litigate the claim." Watson v. Hulick, 481 F.3d 537, 541 (7th Cir. 2007) (citing

Stone v. Powell, 428 U.S. 465, 481-82 (1976)). The Seventh Circuit has held

that

> [a] petitioner has had the benefit of such an opportunity so long as (1) he clearly apprised the state court of his Fourth Amendment claim along with the factual basis for that claim, (2) the state court carefully and thoroughly analyzed the facts, and (3) the court applied the proper constitutional case law to those facts.

Miranda v. Leibach, 394 F.3d 984, 997 (7th Cir. 2005) (citing Pierson v.

O'Leary, 959 F.2d 1385, 1391 (7th Cir. 1992)). The courts' role is "not to

second-guess the state court on the merits of the petitioner's claim, but rather

to assure [themselves] that the state court heard the claim, looked to the right

body of case law, and rendered an intellectually honest decision." Monroe v.

Davis, 712 F.3d 1106, 1114 (7th Cir. 2013). "It takes more than an error in the

state court's analysis to surmount the _Stone_ bar to collateral relief . . . ." Id.

(citing Hampton v. Wyant, 296 F.3d 560, 563-64 (7th Cir. 2002); Leibach, 394

F.3d at 998). Only if the error "betray[s] an unwillingness on the part of the

9

[state] judiciary to treat [the petitioner's] claim honestly and fairly" will an error

provide a basis for a merits review of a Fourth Amendment claim. Id.

The record demonstrates that the petitioner clearly apprised the state

courts at all three levels of his Fourth Amendment claim and the facts that

supported it. The record also shows that the state courts—particularly the

Wisconsin Supreme Court—carefully and thoroughly analyzed the facts, and

looked to the correct body of case law. Indeed, a decision in which six of the

seven Wisconsin Supreme Court justice wrote separate opinions, and each

went to lengths to explain the bases for his or her particular conclusions,

shows the opposite of an "unwillingness on the part of the [state] judiciary to

treat [the petitioner's] claim honestly and fairly." The Supreme Court's decision

is evidence that all of the justices struggled to apply what each believed to be

the correct law to the facts of the petitioner's case.

The petitioner argues that the Supreme Court "erred in their finding of

facts that qualified for the exigent circumstances exception to the warrant

requirement." Dkt. No. 17 at 13. Even if the petitioner is right, that is not

enough to surmount the Stone bar. The petitioner also argues that the majority

decision "is in conflict with decisions in the U.S. Supreme court." Id. In support

of this argument, he cites Missouri v. McNeely, ___ U.S. ___, 133 S. Ct. 1552

(2013). In McNeely, the Supreme Court held that the fact that alcohol may be

metabolizing in a defendant's bloodstream does not constitute an exigent

circumstance that allows law enforcement to conduct nonconsensual blood

testing in drunk driving cases. The court found that, "while the natural

dissipation of alcohol in the blood may support a finding of exigency in a specific case . . ., it does not do so categorically." Id. at 1563. The Supreme Court found that courts needed to determine whether a nonconsensual, warrantless blood test was reasonable on a case-by-case basis. Id.

In contrast, Justice Prosser evaluated the specific facts of the petitioner's case in determining that there were exigent circumstances present. He first concluded that the officers had probable cause to track the cell phone, because it was likely that they would find evidence related to the stabbing wherever the petitioner's cell phone was. Dkt. No. 11-2 at 44. He then found that there were three different exigent circumstances—a threat to safety (the police were aware that the petitioner had stabbed the victim, and the murder weapon was missing); a risk of destruction of evidence (loss of the murder weapon, as well as DNA and other evidence the petitioner might have on his person); and a likelihood that the petitioner would flee (the petitioner had taken his girlfriend's car and left, and there was some evidence to support a conclusion that the petitioner might be headed to Mexico). Id. at 45-50. The court cannot see any conflict between the Supreme Court's analysis in McNeely and Justice Prosser's careful, fact-specific analysis in the petitioner's case.

The petitioner disagrees with Justice Prosser's analysis, but again, that is not enough to surmount the Stone bar. The petitioner had a full and fair opportunity to litigate his Fourth Amendment issue before three levels of the Wisconsin courts, and he did so. It is not this court's role to second-guess the Wisconsin Supreme Court's decision, as long as it looked to the right body of

11

case law and rendered and intellectually honest decision. The Supreme Court's thorough, reasoned analyses—the lead decision, and the various decisions joining the mandate—make clear that the Supreme Court did just that. The petitioner is not entitled to *habeas* relief on his Fourth Amendment claim.

B.    The Wisconsin State Court Did Not Unreasonably Apply Federal Law to the Petitioner's Fifth Amendment Claim.

In Miranda v. Arizona, the United States Supreme Court held that law enforcement officer who are holding an individual for interrogation must clearly inform that individual "that he has the right to consult with a lawyer and to have the lawyer with him during interrogation . . . ." Miranda, 384 U.S. at 471. The Court further held that if the individual "indicates that he wishes the assistance of counsel before any interrogation occurs," law enforcement "cannot rationally ignore or deny his request on the basis that the individual does not have or cannot afford a retained attorney." Id. Finally, the Court held that "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." Id. at 474.

Individuals are not always clear in expressing their desire to have an attorney represent them. The Supreme Court has held that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, [the Court's] precedents do not require the cessation of questioning." Davis. v. United States, 512 U.S. 452, 459 (1994). Following this reasoning, the Wisconsin Supreme Court held in State v. Jennings, 252 Wis. 2d 228, 246 (2002) that a defendant who stated, "I

think maybe I need to talk to a lawyer," did not make it clear that he was asking to have a lawyer present during the interrogation.

In the petitioner's case, the Wisconsin Supreme Court found that the petitioner's questions about how to get a lawyer here did not constitute an unequivocal invocation of his right to counsel. The main opinion reviewed the petitioner's statements in the context of the topic the interrogating officers were discussing with him, and found that the officer reasonably could have concluded that the petitioner was not invoking his right to counsel because his question arose in the context of the officer's discussion of the extradition process. Dkt. No. 11-2 at 50-52. In other words, Justice Prosser found it reasonable that the officer could have understood the petitioner to be asking how to get a lawyer to represent him during the extradition process. Id. at 52. Justices Crooks, Roggensack, Ziegler and Gableman agreed. Justices Bradley and Abrahamson disagreed.

The fact that two of the seven justices disagreed with the majority (and that the petitioner also disagrees) does not mandate the conclusion that the majority's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. It was not unreasonable for the majority to conclude that the petitioner's question—"How can I do to get an attorney here because I don't have enough to afford for one"—was just as equivocal as the Davis defendant's statement that he thought maybe he needed an attorney. In light of Davis and Jennings, this court cannot

13

conclude that the majority unreasonably applied clearly-established federal law, or that it made an unreasonable determination of the facts given the evidence. The petitioner is not entitled to *habeas* relief on his Fifth Amendment claim.

C.      The Court Need Not Reach the Question of Harmless Error.

In the petition, the petitioner argued that the Court of Appeals' harmless error analysis was contrary to federal law. Dkt. No. 1 at 17. The petitioner did not discuss this argument in his brief in support of the petition, and the court does not need to address it. The Wisconsin Supreme Court's decision—which was not based on a harmless error analysis[4]—is the controlling decision which the petitioner challenges. Even if the Court of Appeals erred in applying the harmless error doctrine, the Wisconsin Supreme Court's decision rendered any such error irrelevant.

D.      If the Petitioner Seeks to Challenge the Voluntariness of His Plea, He Has Not Exhausted His Remedies.

The court has ruled on the grounds the petitioner raised in his October 2, 2014 *habeas* petition. In his January 21, 2015 brief in support of the petition, however, the petitioner argued that he did not enter his plea knowingly, voluntarily and intelligently. Dkt. No. 17 at 14. In her decision joining the mandate, Justice Bradley concluded that even had the trial court granted the petitioner's suppression motions, he likely would have pled guilty to the reduced charge given the weight of the other evidence against him. The

---

[4] Justice Bradley based her decision to join the mandate on a harmless error analysis. But Justice Prosser, who wrote the lead decision, did not.

petitioner seizes on this reasoning—reasoning from one of the six justices who joined the mandate—as an opportunity to argue that the other evidence against him was not that strong, and that he would not have pled guilty had the trial court granted the motions to suppress.

The petitioner did not raise this argument before any of the state courts. The Supreme Court long has held that a federal court should not consider a claim in a *habeas* petition if the petitioner did not give the state courts an opportunity to decide the claim. See Rose v. Lundy, 455 U.S. 509, 516 (1982). This is called requiring a petitioner to "exhaust" his state court remedies. The Supreme Court has instructed district courts to dismiss *habeas* petitions that contain both exhausted and unexhausted claims. Id. at 522. Had the petitioner identified this claim as a ground in his October 2014 petition, it is likely that Judge Stadtmueller (who was the judge assigned to the case at the "screening" stage) would have dismissed the petition to give the petitioner the opportunity to return to state court and litigate the claim there. Judge Stadtmueller discussed the exhaustion requirement extensively in his November 4, 2014 screening order. Dkt. No. 8 at 3. But Judge Stadtmueller concluded—correctly—that the petitioner had exhausted his Fourth and Fifth Amendment claims in state court. Id. at 3-4. Those were the only claims Judge Stadtmueller knew of.

Only after Judge Stadtmueller allowed the petitioner to proceed on his Fourth and Fifth Amendment claims did the petitioner try to challenge the knowing and voluntary nature of his guilty plea, by adding it as a new issue in

his brief in support of his petition. This court cannot, and will not, rule on this claim when the state courts did not have the opportunity to do so, and when Judge Stadtmueller did not have the opportunity to dismiss the petition so that the petitioner could return to state court to present the claim there.

Even if the petitioner had exhausted this claim in state court, and had raised it properly in his petition here, the court finds that it would not have had an impact on the court's decision. Only one of the six justices who joined the mandate concluded that the petitioner would have entered his plea even had the trial court granted the suppression motions. Five other justices joined the mandate on other grounds.

## VI.    CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04 (2000) (internal quotation marks omitted).

The court concludes that its decision to deny the writ is neither incorrect nor debatable among jurists of reason. The petitioner received a full and fair opportunity to litigate his Fourth and Fifth Amendment claims, and the

Wisconsin Supreme Court did not unreasonably apply federal law or Supreme Court precedent.

## VII. CONCLUSION

The court **DENIES** the petitioner's §2254 petition, dkt. no. 1, and **DECLINES** to issue a certificate of appealability.

Dated in Milwaukee, Wisconsin this 22nd day of June, 2017.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**